# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Chrystal Edwards, Terron Edwards, John Jacobson, Catherine Cooper, Kileigh Hannah, Kristopher Rowe, Katie Rowe, Charles Dennert, Jean Ackerman, William Laske, Jan Graveline, Todd Graveline, Angela West, Douglas West, *and all others similarly situated,*

        Plaintiffs,

    v.

Robin Vos, *in his official capacity as Speaker of the Wisconsin State Assembly*; Scott Fitzgerald, *in his official capacity as Majority Leader of the Wisconsin State Senate*; Wisconsin State Assembly; Wisconsin State Senate; Wisconsin Elections Commission; Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen, *in their official capacities as members of the Wisconsin Elections Commission*, and Meagan Wolfe, *in her official capacity as the Administrator of the Wisconsin Elections Commission*,

        Defendants.

Case No. 3:20-cv-340-wmc

---

## LEGISLATIVE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

---

MISHA TSEYTLIN
(State Bar No. 1102199)
KEVIN M. LEROY
(State Bar No. 1105053)
TROUTMAN SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Attorneys for Legislative Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 1

ARGUMENT ...................................................................................................... 8

I. Plaintiffs' Challenges To Elections Scheduled For August, November, And Thereafter Are Jurisdictionally Unripe ................................................. 8

II. *Burford* Abstention Requires The Court To Dismiss Or, At A Minimum, Stay, This Case ................................................................................ 13

III. Plaintiffs' Claims For Relief Fail To State A Claim ........................................ 16

A. Plaintiffs Have Not Stated A Claim For Relief Under The First And Fourteenth Amendments ........................................................... 17

B. Plaintiffs Have Not Stated A Claim For Relief Under Title II Of The Americans With Disabilities Act ................................................... 23

IV. Plaintiffs Claim For Money Damages Under 42 U.S.C. § 1983 For Alleged Violations Of Their Right To Vote Is Barred By Sovereign Immunity ........................................................................................ 28

V. Plaintiffs' Claims Against Speaker Vos And Majority Leader Fitzgerald Fail Due To Legislative Immunity, But These Leaders Can Remain As Defendants Because The Legislature Can Speak For The State's Interest In Defense Of State Law ..................................................... 29

CONCLUSION ................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*A.H. ex. Rel. Holzmueller v. Ill. High Sch. Ass'n*,
881 F.3d 587 (7th Cir. 2018) .......................................................... 26

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .................................................................. 9, 12

*Adkins v. VIM Recycling, Inc.*,
644 F.3d 483 (7th Cir. 2011) ..................................................... 14, 15

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ............................................................ 14, 17, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................... 16, 17, 27, 28

*Barnes v. Gorman*,
536 U.S. 181 (2002) ...................................................................... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 16

*Bible v. United Student Aid Funds, Inc.*,
799 F.3d 633 (7th Cir. 2015) ......................................................... 17

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) .................................................................. 9, 12

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998) ........................................................................ 29

*Bowes v. Ind. Sec'y of State*,
837 F.3d 813 (7th Cir. 2016) ......................................................... 15

*Burdick v. Takushi*,
504 U.S. 428 (1992) ............................................................ 14, 17, 20

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) ...................................................................... 13

*Califano v. Sanders*,
430 U.S. 99 (1977) ......................................................................... 9

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008) ...................................................................... 17

*Dadian v. Vill. of Wilmette*,
269 F.3d 831 (7th Cir. 2001) ..................................................... 24, 26

*Democratic Party of Wis. v. Vos*,
408 F. Supp. 3d 951 (W.D. Wis. 2019) ............................................ 30

*Denius v. Dunlap,*
    330 F.3d 919 (7th Cir. 2003) ............................................................... 1

*E & E Hauling v. Forest Preserve Dist.,*
    821 F.2d 433 (7th Cir. 1987) ........................................................... 13

*E.A. v. Gardner,*
    929 F.3d 922 (7th Cir. 2019) ........................................................... 28

*Eu v. San Francisco Cty. Democratic Cent. Comm.,*
    489 U.S. 214 (1989) ........................................................................ 22

*Frank v. Walker,*
    768 F.3d 744 (7th Cir. 2014) ...................................................... 1, 17

*Frank v. Walker,*
    819 F.3d 384 (7th Cir. 2016) .................................................... 18, 23

*Griffin v. Roupas,*
    385 F.3d 1128 (7th Cir. 2004) ................................................ *passim*

*Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.,*
    463 U.S. 582 (1983) ........................................................................ 24

*Henson v. CSC Credit Servs.,*
    29 F.3d 280 (7th Cir. 1994) ............................................................. 2

*Jefferson v. Dane Cty.,*
    2020AP557-OA (Wis. Mar. 31, 2020) ............................................ 16

*Kohen v. Pac. Inv. Mgmt. Co. LLC,*
    571 F.3d 672 (7th Cir. 2009) ............................................................ 8

*Lacy v. Cook Cty.,*
    897 F.3d 847 (7th Cir. 2018) .................................................... 24, 27

*League of Women Voters v. Knudson,*
    No. 19-CV-1029-JDP, 2020 WL 1638452 (W.D. Wis. Apr. 2, 2020) ............... 12

*Lehn v. Holmes,*
    364 F.3d 862 (7th Cir. 2004) ............................................................ 9

*Lopez v. City of Houston,*
    617 F.3d 336 (5th Cir. 2010) .......................................................... 12

*Love v. Westville Corr. Ctr.,*
    103 F.3d 558 (7th Cir. 1996) ............................................ 23, 25, 26

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
    491 U.S. 350 (1989) .......................................................... 13, 14, 15

*NRP Holdings LLC v. City of Buffalo,*
    916 F.3d 177 (2nd Cir. 2019) .................................................... 29, 30

*Oconomowoc Residential Programs v. City of Milwaukee,*
   300 F.3d 775 (7th Cir. 2002) ............................................... 23

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ........................................................... 9

*P.F. by A.F. v. Taylor,*
   914 F.3d 467 (7th Cir. 2019) ............................................. 23

*Planned Parenthood of Wis., Inc. v. Kaul,*
   942 F.3d 793 (7th Cir. 2019) ............................................. 30

*Purcell v. Gonzalez,*
   549 U.S. 1 (2006) (per curiam) .......................................... 15

*Reeder v. Madigan,*
   780 F.3d 799 (7th Cir. 2015) ........................................ 29, 30

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.,*
   729 F.3d 248 (3d Cir. 2013) .............................................. 24

*Serv. Emps. Int'l Union (SEIU), Local 1 v. Vos,*
   Nos. 2019AP614, 2019AP622 (Wis. *argued* Oct. 21, 2019) ............ 30

*SKS & Assocs., Inc. v. Dart,*
   619 F.3d 674 (7th Cir. 2010) ............................................. 16

*Stone v. Bd. of Election Comm'rs.,*
   750 F.3d 678 (7th Cir. 2013) ........................................ 17, 22

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ............................................... 9, 10, 13

*Sw. Voter Registration Educ. Project v. Shelley,*
   344 F.3d 914 (9th Cir. 2003) ............................................. 21

*Tennessee v. Lane,*
   541 U.S. 509 (2004) ......................................................... 23

*Tenney v. Brandhove,*
   341 U.S. 367 (1951) ......................................................... 29

*Texas v. United States,*
   523 U.S. 296 (1998) .......................................................... 8

*United States v. Georgia,*
   546 U.S. 151 (2006) ......................................................... 24

*Va. House of Delegates v. Bethune-Hill,*
   139 S. Ct. 1945 (2019) ...................................................... 30

*W. Bend Mut. Ins. Co. v. Schumacher,*
   844 F.3d 670 (7th Cir. 2016) ........................................ 17, 27

*Wagoner v. Lemmon,*
    778 F.3d 586 (7th Cir. 2015) ................................................................. 23, 24, 26

*Wiesmueller v. Kosobucki,*
    513 F.3d 784 (7th Cir. 2008) ............................................................................. 8

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ................................................................................... 28, 29

*Wis. Cent., Ltd. v. Shannon,*
    539 F.3d 751 (7th Cir. 2008) ............................................................................. 9

*Wis. Legislature v. Palm,*
    2020 WI 42 ............................................................................................ 5, 11, 16

*Wis. Right to Life State Political Action Comm. v. Barland,*
    664 F.3d 139 (7th Cir. 2011) ................................................................. 9, 10, 11

*Wynn v. Southward,*
    251 F.3d 588 (7th Cir. 2001) ........................................................................... 29

*Yeldell v. Cooper Green Hosp., Inc.,*
    956 F.2d 1056 (11th Cir. 1992) ................................................................. 29, 30

**Statutes And Rules**

42 U.S.C. § 1983 ................................................................................... 1, 28, 29

42 U.S.C. § 12131 ........................................................................................... 23

42 U.S.C. § 12134 ........................................................................................... 23

Fed. R. Civ. P. 12 ........................................................................................... 16

Fed. R. Evid. 201 ............................................................................................. 2

Wis. Stat. § 5.02 ............................................................................................. 20

Wis. Stat. § 5.05 ............................................................................................... 3

Wis. Stat. § 5.25 ............................................................................................... 3

Wis. Stat. § 6.77 ......................................................................................... 2, 13

Wis. Stat. § 6.78 ......................................................................................... 2, 13

Wis. Stat. § 6.80 ......................................................................................... 2, 13

Wis. Stat. § 6.82 ......................................................................................... 2, 27

Wis. Stat. § 6.85 ..................................................................................... 1, 19, 27

Wis. Stat. § 6.855 ....................................................................................... 2, 13

Wis. Stat. § 6.86 ................................................................................... *passim*

Wis. Stat. § 6.87 ............................................................................................... 2

Wis. Stat. § 7.10 ..................................................................................... 3, 4, 20

Wis. Stat. § 7.15 ............................................................................ 3, 4, 20

Wis. Stat. § 13.365 .......................................................................... 30, 31

Wis. Stat. § 17.03 .................................................................................. 22

Wis. Stat. § 59.10 .................................................................................. 21

Wis. Stat. § 59.51 .................................................................................. 21

Wis. Stat. § 323.14 ................................................................................ 22

Wis. Stat. § 803.09 .......................................................................... 30, 31

## Regulations

28 C.F.R. § 35.130 ......................................................................... 23, 26

28 C.F.R. Part 35 .................................................................................. 23

## Constitution

U.S. Const. amend. XI ........................................................................... 28

## Other Authorities

Emergency Order #12, Safer At Home Order (Mar. 24, 2020) ..................................... 5

Emergency Order #28, Safer At Home Order (Apr. 16, 2020) ..................................... 5

Memo of Administrator Meagan Wolfe to Members of the Wisconsin Elections
     Commission, Summary of April 7, 2020 Election (Apr. 2020) ............... 3, 6, 15

Statement From The [White House] Press Secretary (Apr. 27, 2020) ........................ 5

The White House, The Centers for Disease Control and Prevention, & the
     Food and Drug Administration, *Testing Blueprint: Opening Up
     America Again* (Apr. 27 2020) ................................................................ 5, 11

The White House, The Centers for Disease Control and Prevention, & The
     Food and Drug Administration, *Testing Overview: Opening Up
     America Again* (Apr. 27, 2020) ................................................................ 5, 11

Wis. Election Comm'n, *Absentee Ballot Report – April 7, 2020 Spring
     Election and Presidential Preference Primary* (Apr. 21, 2020)...................... 19

Wis. Elections Comm'n, *7th Congressional District Special Election* ........................ 6

Wis. Elections Comm'n, *Absentee Ballot Report – May 12, 2020 Special
     Election for Congressional District 7* (May 18, 2020) ............................. 6, 7, 11

Wis. Elections Comm'n, *April 7, 2020 Absentee Voting Report*
     (May 15, 2020)..................................................................................... *passim*

Wis. Elections Comm'n, *Canvass Results for 2020 Spring Election and
     Presidential Preference Vote – 4/7/2020* (May 4, 2020).................................... 4

Wis. Elections Comm'n, *Curbside Voting*..................................................................... 3

Wis. Elections Comm'n, *I Want To Vote Absentee*...................................... 1, 2, 13, 19

Wis. Elections Comm'n, *May 1, 2020 Voter Registration Statistics* (May 1, 2020) ................................................................................................... 7

Wis. Elections Comm'n, *More Than 69,000 Absentee Ballots Already Returned for May 12 Special Election* (May 8, 2020) ................................. 7, 19

Wis. Elections Comm'n, *Unofficial Spring Election Turnout-34.3%-4/14/2020* (Apr. 14, 2020) ................................................................................. 4

## INTRODUCTION

Plaintiffs attack the April 7 Election, and Wisconsin's election administration more broadly, with an Amended Complaint that is full of rhetoric and *ad hominem* attacks, but devoid of any legal merit. Among many other legal defects, this Court lacks jurisdiction over Plaintiffs' challenges to Wisconsin elections held August, November, and beyond, because those claims are unripe. Plaintiffs' claims fail on the merits, as well, as Plaintiffs come nowhere close to pleading sufficient allegations to show that declining to cancel an election was improper under the *Anderson/Burdick* framework. They likewise fail to plead a plausible claim for disability discrimination under the Americans with Disabilities Act. And Plaintiffs' claim for money damages under 42 U.S.C. § 1983, is foreclosed by sovereign immunity.

## BACKGROUND

A. Wisconsin makes voting easy. *See Frank v. Walker*, 768 F.3d 744, 748 (7th Cir. 2014) ("*Frank I*"). Any registered voter in Wisconsin may vote absentee by mail for any reason, Wis. Stat. § 6.85(1), (3), allowing them to cast a ballot from the safety and comfort of their own homes. To do so, voters must simply request an absentee-ballot by mail, fax, or online by "the 5th day immediately preceding the election," or they may make such a request in person by "the Sunday preceding the election," Wis. Stat. § 6.86(1)(ac), (b); Wis. Elections Comm'n, *I Want To Vote Absentee*.[1] For the

---

[1] Available at https://elections.wi.gov/voters/absentee (last accessed May 18, 2020). The Court should take judicial notice of facts in the publicly available government websites cited in this Memorandum, *see Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003); *see*

upcoming August and November 2020 Elections, voters wishing to vote absentee may make such a request *immediately*. To complete the absentee-ballot request, the voter must submit a copy of their photo ID, which may be done with a smart phone or scanner if the request is made online. Wis. Stat. §§ 6.86(1), 6.87(1). Then, after receiving the ballot, the voter need only fill it out, obtain the signature of a witness, Wis. Stat. § 6.87(4), and ensure its return by 8:00 p.m. on Election Day for it to be counted, Wis. Stat. § 6.87(6). Voters may also complete "in-person absentee voting" up until "the Sunday preceding the election," Wis. Stat. § 6.86(1)(b), allowing them to both request and cast their absentee ballot at their "municipal clerk's office, or another designated location," Wis. Elections Comm'n, *I Want To Vote Absentee*, *supra*; *see* Wis. Stat. §§ 6.855, 6.86(1)(a)2. Beyond absentee voting, any voter may also vote in person at their polling places on Election Day. *See* Wis. Stat. §§ 6.77–78, 6.80.

Wisconsin law also contains special provisions that enable disabled and hospitalized voters to vote more easily, beyond the standard absentee-voting procedures described above. Disabled voters may vote in-person at a polling place from their vehicle with the assistance of a polling-place inspector, through a procedure known as "curbside voting." Wis. Stat. § 6.82(1); Wis. Elections Comm'n,

---

*generally* Fed. R. Evid. 201, which notice is proper even at the motion-to-dismiss stage, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

*Curbside Voting*.[2]  And hospitalized electors may receive assistance from an agent to vote via absentee ballot.  Wis. Stat. § 6.86(3)(a)(1)–(2).

Wisconsin has adopted "the most decentralized" approach to election regulation in the country.  *See* Memo of Administrator Meagan Wolfe to Members of the Wisconsin Elections Commission, Summary of April 7, 2020 Election at 1 (Apr. 2020) ("Wolfe Memo");[3] Wis. Elections Comm'n, *April 7, 2020 Absentee Voting Report* 10 (May 15, 2020) ("WEC Absentee Voting Report").[4]  The Commission, a state agency, has the general "responsibility for the administration" of the State's "laws relating to elections and election campaigns," and thus oversees elections statewide.  Wis. Stat. § 5.05(1).  But to conduct these statewide elections, Wisconsin law empowers "1,850 municipal election officials and 72 county election officials" throughout the State.  Wolfe Memo at 1; *see* Wis. Stat. §§ 7.10, 7.15.  These local officials have the duty to "provide [the] ballots" for elections, Wis. Stat. § 7.10(1)(a); "establish[ ]" the "polling place[s]" for elections, Wis. Stat. § 5.25(2); staff "inspectors" to "serve" at those polling places, including by "[r]eassign[ing]" inspectors "to assure adequate staffing at all polling places," Wis. Stat. § 7.15(1)(k); "[e]quip polling places"

---

[2]  Available at https://elections.wi.gov/voters/accessibility/curbside-voting (last accessed May 17, 2020).

[3]  Available at https://elections.wi.gov/sites/elections.wi.gov/files/2020-04/April%207%20Election%20Summary%20and%20Next%20Steps.pdf (last accessed May 17, 2020).

[4]  Available at https://elections.wi.gov/sites/elections.wi.gov/files/2020-05/April%202020%20Absentee%20Voting%20Report.pdf (last accessed May 18, 2020).

with "sufficient election supplies," Wis. Stat. §§ 7.10(1)(b), 7.15(1)(a)–(b); and "[t]rain election officials" according to the Commission's standards, Wis. Stat. § 7.15(1)(e).

B. Contrary to dire predictions, the April 7, 2020 Election had far greater voter turnout than comparable prior elections, except for only 2016's Presidential Primary that featured heavily contested ballots in both major parties. *See* Wis. Elections Comm'n, *Unofficial Spring Election Turnout-34.3%-4/14/2020* (Apr. 14, 2020).[5] Over 1.5 million Wisconsinites cast a ballot in the April 7 Election, Wis. Elections Comm'n, *Canvass Results for 2020 Spring Election and Presidential Preference Vote – 4/7/2020* (May 4, 2020),[6] representing 34.3% of eligible voters, *see* Wis. Elections Comm'n, *Unofficial Spring Election Turnout-34.3%-4/14/2020*, *supra* (providing Wisconsin's estimated voting-age population as 4,524,066). The turnout for previous Spring Elections was 27.2% (2019), 22.3% (2019), 15.9% (2017), 47.4% (2016), 26.1% (2012), and 34.9% (2008). *Id.* Further, "[a]bsentee voting in the April 2020 election reach unprecedented levels," with "the final election data conclusively indicat[ing] that the election did not produce an unusual number [of] unreturned or rejected [absentee] ballots." WEC Absentee Voting Report at 3, 24.

C. The federal government has recently issued guidelines for "opening up America again," as the threat of COVID-19 lessens. *See* The White House, The

---

[5] Available at https://elections.wi.gov/blog (last accessed May 17, 2020).

[6] Available at https://elections.wi.gov/sites/elections.wi.gov/files/Canvass%20Results%20Summary_spring%20election%20all%20contests_4_7_2020.pdf (last accessed May 17, 2020).

Centers for Disease Control and Prevention ("CDC"), & The Food and Drug Administration ("FDA"), *Testing Overview: Opening Up America Again* (Apr. 27, 2020);[7] The White House, CDC, & FDA, *Testing Blueprint: Opening Up America Again* (Apr. 27 2020);[8] *see also* Statement From The [White House] Press Secretary (Apr. 27, 2020).[9] These guidelines serve as a "[b]lueprint" for States to "reopen their economies and get people back to work, while protecting the health and safety of the American people." The White House, CDC, & FDA, *Testing Blueprint* at 2, *supra*.

The Wisconsin Governor's original "Safer at Home" Order—issued on March 24, 2020—expired on April 24, 2020. *See* Emergency Order #12, Safer At Home Order (Mar. 24, 2020). The Governor's appointee sought to renew that Order, with only minor modifications, until May 26, 2020, *see* Emergency Order #28, Safer At Home Order (Apr. 16, 2020)[10]—and the Wisconsin Supreme Court recently struck that extension down on state-law grounds, *Wis. Legislature v. Palm*, 2020 WI 42, ¶ 3.

The Wisconsin Elections Commission ("Commission") has begun to investigate additional steps that it may take to ensure the State's readiness for Wisconsin's upcoming 2020 elections, based on the State's experience with the April 7 Election.

---

[7] Available at https://www.whitehouse.gov/wp-content/uploads/2020/04/Testing-Overview-Final.pdf (last accessed May 17, 2020).

[8] Available at https://www.whitehouse.gov/wp-content/uploads/2020/04/Testing-Blueprint.pdf (last accessed May 17, 2020).

[9] Available at https://www.whitehouse.gov/briefings-statements/statement-press-secretary-126/ (last accessed May 17, 2020).

[10] Available at https://evers.wi.gov/Documents/COVID19/EMO28-SaferAtHome.pdf (last accessed May 17, 2020).

*See generally* Wolfe Memo; WEC Absentee Voting Report. For example, the Commission is investigating proposals related to better providing sanitation supplies and personal protective equipment for polling locations for upcoming elections, Wolfe Memo at 1–3; enhancing the WisVote Database, Wolfe Memo at 3; WEC Absentee Voting Report at 22–23, and the MyVote Website, Wolfe Memo at 4; WEC Absentee Voting Report at 22–23; funding the purchases of envelopes and postage for absentee ballots, Wolfe Memo at 5; ensuring adequate levels of poll workers for future elections, *id.* at 5–6; issuing guidance and communications for clerks, *id.* at 6–7; studying polling-place consolidations, *id.* at 7–8; studying how better to use the National Guard and other groups as "last minute" poll workers, *id.* at 8–9; building an intelligent-barcode system into the absentee-ballot system, *id.* at 10; WEC Absentee Voting Report at 21–22, and issuing guidance on election-results-reporting systems, Wolfe Memo at 10.

On May 12, Wisconsin's Seventh Congressional District successfully completed a special election for its U.S. Congressional seat. Wis. Elections Comm'n, *7th Congressional District Special Election*.[11] At present count, 94,007 residents of the district voted absentee in the election, Wis. Elections Comm'n, *Absentee Ballot Report – May 12, 2020 Special Election for Congressional District 7* (May 18, 2020),[12] constituting just over 22% of the entire registered voter population in the district, *see*

---

[11] Available at https://elections.wi.gov/node/6577 (last accessed May 17, 2020).

[12] Available at https://elections.wi.gov/index.php/node/6906 (last accessed May 18, 2020).

Wis. Elections Comm'n, *May 1, 2020 Voter Registration Statistics* (May 1, 2020),[13] and over 69,000 of those absentee ballots were received by the afternoon of May 8, Wis. Elections Comm'n, *More Than 69,000 Absentee Ballots Already Returned for May 12 Special Election* (May 8, 2020).[14] Furthermore, almost every voter who requested an absentee ballot in the May 12 Special Election received one. Wis. Elections Comm'n, *Absentee Ballot Report – May 12, 2020 Special Election for Congressional District 7, supra.*

D. Plaintiffs filed their initial Complaint on April 13, 2020, Dkt. 1, before filing an Amended Complaint on May 4, Dkt. 5. In the Amended Complaint, putative-class Plaintiffs challenge both Wisconsin's decision to hold its April 7 Election and what Plaintiffs presume will be inadequate election-administration processes in Wisconsin's future 2020 elections—the August 11 Partisan Primary and the November 3 General and Presidential Election. *See, e.g.*, Dkt. 5 ¶¶ 3, 5, 8. Plaintiffs allege that disabled voters (one of the classes they wish to certify, Dkt. 5 ¶ 79) were denied their rights under the ADA, because Defendants "fail[ed] to protect Wisconsin residents with disabilities covered by the ADA during the Spring Election," by "insisting" that that election proceed. Dkt. 5 ¶¶ 118, 120. Plaintiffs also contend that Wisconsin voters who are eligible to vote in future 2020 elections (another class they wish to certify, Dkt. 5 ¶ 80) are at risk of total deprivation of their voting rights unless

---

[13] Available at https://elections.wi.gov/node/6886 (last accessed May 17, 2020).

[14] Available at https://elections.wi.gov/node/6897 (last accessed May 18, 2020) (providing link to spreadsheet).

the Court "establish[es] reasonable and constitutionally sufficient rules for those elections, including, but not limited to, the right to vote by mail for all Wisconsin residents." Dkt. 5 ¶ 99. They seek, among other things, damages for all disabled voters whose rights under the ADA were violated by the State's holding of the April 7 Election, as well as an order from this Court requiring "fair, reasonable, and constitutionally sufficient procedures governing the Future 2020 Elections" to permit all voters to "safely participate in those elections." Dkt. 5 at 49–50.

## ARGUMENT

### I. Plaintiffs' Challenges To Elections Scheduled For August, November, And Thereafter Are Jurisdictionally Unripe

A plaintiff seeking to represent a class in federal court must demonstrate, "*[b]efore* a class is certified," that the court has subject-matter jurisdiction over his claims as an individual, since before certification "no one else has a legally protected interest in maintaining the suit." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009); *see Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008). If a plaintiff fails to meet this burden, the Court must dismiss the case for lack of jurisdiction. *See Kohen*, 571 F.3d at 676. Here, the Court lacks jurisdiction over Plaintiffs' challenge to election laws applied to any future 2020 Wisconsin elections because those challenges are unripe.

A. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). Thus, "when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete

conflicts," the case is unripe and must be dismissed. *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) (citation omitted). Dismissing the claim under the ripeness doctrine enables the courts to decide the matter later, after "further factual development" sharpens the issue, *see Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733, 737 (1998); allows the courts to avoid making any "unnecessary decision of constitutional issues," *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 138 (1974); and prevents them from "entangling themselves in abstract disagreements," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Ripeness is part of the Court's subject-matter jurisdiction because "it implicates the possibility of th[e] Court issuing an advisory opinion." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).

Courts employ a two-factor test to determine ripeness. First, the court considers the "fitness of the issues for judicial decision." *Abbott*, 387 U.S. at 149; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014); *accord Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). Unlike "purely legal" disputes that are ripe for adjudication at once, questions that "will [ ] be clarified by further factual development," *Susan B. Anthony List*, 573 U.S. at 167 (citation omitted), or that are "uncertain" or "contingent" on future events are unripe, *Wis. Right to Life*, 664 F.3d at 148. Second, the court considers "the hardship to the parties of withholding court consideration." *Abbott*, 387 U.S. at 149. Claims *not* involving present or immediate violations of the plaintiff's rights are unripe, as opposed to claims where the plaintiff is already suffering a "substantial hardship."

*Susan B. Anthony List*, 573 U.S. at 167–68 (claim alleging ongoing First Amendment violation satisfied hardship factor); *accord Wis. Right to Life*, 664 F.3d at 148 (same).

B. Here, Plaintiffs' voting-rights and ADA claims are unripe insofar as they seek relief for future elections in Wisconsin. Plaintiffs contend—based on their unsupported subjective "belie[fs]"—that "Defendants will take a . . . cavalier attitude about voting in Future 2020 Elections" and that there is "the likelihood of this [S]tate still confronting the public health effects of COVID-19 in August and November." Dkt. 5 ¶¶ 99, 102. So, as a remedy, Plaintiffs request "injunctive relief establishing safe, reasonable, disability accessible, and constitutionally sufficient voting procedures governing the Future 2020 Elections," which remedies include at least "mail-in voting procedures that allow all those eligible to vote in Wisconsin to do so from the safety of their home without being required to request an absentee ballot." Dkt. 5 ¶ 8.b. In other words, Plaintiffs' request court-ordered "vote by mail for all Wisconsin residents" for all future 2020 elections. Dkt. 5 ¶ 99; *see also* Dkt. 5 ¶ 8.b. (also requesting "procedures sufficient to allow in-person voting by voters whose disabilities affect their ability to vote by mail" in future 2020 elections). These sweeping requests for relief are plainly unripe.

Beginning with the fitness factor of the ripeness inquiry, Plaintiffs' claims for relief for elections scheduled to take place in August, November, and beyond are not fit for judicial decision now because they depend on the COVID-19 situation during those elections, medical innovations developed to mitigate those risks at the time, and the government's responses, including as to election administration. *See* Dkt. 5

¶ 99, 102. All of these are both "uncertain" and "contingent" on factual developments that have not yet come to pass. *Wis. Right to Life*, 664 F.3d at 148.

Consider just the recent developments in late April 2020 and early May 2020. The federal government—acting through the CDC, FDA, and White House—issued guidelines for "opening up America again" in the months to come, as the risks posed by COVID-19 lessen. *See* The White House, CDC & FDA, *Guidelines: Opening Up America Again*, *supra*; The White House, CDC, & FDA, *Testing Blueprint*, *supra*. The Commission has already successfully completed one election after the April 7 Election—the May 12 Special Election for Congressional District 7—allowing over 94,000 voters in that one district to vote absentee. *See* Wis. Elections Comm'n, *Absentee Ballot Report – May 12, 2020 Special Election for Congressional District 7*, *supra*. And Governor Evers' unconfirmed appointee, whose original "Safer at Home" Order expired April 24, 2020, sought to extend this order to May 26 only—well before either of the forthcoming 2020 statewide elections—which extension the Wisconsin Supreme Court recently struck down on state-law grounds, *Palm*, 2020 WI 42, ¶ 3.

Further, the Commission has begun taking steps to investigate the State's readiness for future elections and is exploring making numerous changes to on-the-ground election administration, absentee-voting envelopes and postage, its MyVote website, and so on. *See supra* pp. 5–6; *contra* Dkt. 5 ¶ 99 (accusing Defendants of harboring a "cavalier attitude about voting in Future 2020 Elections"). Whatever steps the Commission takes—and whatever additional laws or regulations the State of Wisconsin may decide to enact—will be shaped by these investigations, as well as

the developments in the COVID-19 situation in the coming months. Any of these changes, in turn, will inevitably impact the merits (if any) of both of the claims that Plaintiffs have attempted to bring.

Without clarity surrounding the course of COVID-19, the development of medical advances to combat this disease, and the government's response to the pandemic in the upcoming months, this Court cannot possibly judge whether the application of Wisconsin's voting requirements in August, November, or beyond will burden Plaintiffs' voting rights under either the Constitution or the ADA. *Accord League of Women Voters v. Knudson*, No. 19-CV-1029-JDP, 2020 WL 1638452, at *1–2 (W.D. Wis. Apr. 2, 2020). Therefore, Plaintiffs' claims are not fit for resolution at this time. *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010). For this Court to conclude otherwise risks "entangling" it in an "abstract disagreement[ ]" over the correct approach to administering an election during a pandemic that may no longer exist, *Abbott Labs.*, 387 U.S. at 148, potentially forcing the Court to make unnecessary constitutional decisions, *Blanchette*, 419 U.S. at 138.

Moving to the hardship factor, Plaintiffs would suffer no hardship if the Court refused to adjudicate their claims for relief for the August and November 2020 elections, and beyond, in this case. The right that Plaintiffs seek to vindicate in this lawsuit with respect to those elections is the right to vote in those elections. *See, e.g.*, Dkt. 5 at 50. Plaintiffs fully vindicate their voting rights if they have a meaningful avenue to vote in these upcoming elections, which they plainly have. *See supra* pp. 1–3; *see also infra* Part III.A. Plaintiffs have until August 6, 2020, to request absentee

ballots by mail or online for the August 11 Partisan Primary, *see* Wis. Stat. § 6.86(1)(b), and until October 29 to request absentee ballots by mail or online for the November 3 General and Presidential Election, *see id.* Each Plaintiff can request an absentee ballot *immediately*, months in advance of the deadlines, and has no reason to believe that any such request will be left unfulfilled. And if, for whatever reason, a voter chooses not to take advantage of that option, they can also vote absentee in person at their local clerk's office or another designated location up until the Sunday preceding the election, Wis. Elections Comm'n, *I Want To Vote Absentee*, *supra*; *see* Wis. Stat. §§ 6.855, 6.86(1)(a)2 & (1)(b), or in-person on election day, *see* Wis. Stat. §§ 6.77–78, 6.80. Accordingly, Plaintiffs have alleged no present or immediate violations of their rights, thus they have not shown that a "substantial hardship" would result from the Court dismissing both their claims on ripeness grounds now. *Susan B. Anthony List*, 573 U.S. at 167–68.

## II. *Burford* Abstention Requires The Court To Dismiss Or, At A Minimum, Stay, This Case

A. Under the *Burford* abstention doctrine, federal courts should dismiss or, at a minimum, stay a case, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *E & E Hauling v. Forest Preserve Dist.*, 821 F.2d 433 (7th Cir. 1987), when "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (citation omitted). "In other words, federal courts may abstain [under *Burford*] when principles of federalism warrant deference to a state's

regulatory regime." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011). State election law qualifies as a "regulatory regime," *id.*, for purposes of *Burford* abstention, given that such laws involve the most "substantial" of "public concern[s]," *NOPSI*, 491 U.S. at 361, which is the people's right to govern themselves, *accord Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004). Indeed, a comprehensive election-law system furthers "the State's important regulatory interests," *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)), and is necessary to ensure "fair and honest" elections, instead of "chaos," *Anderson*, 460 U.S. at 788; *accord Griffin*, 385 F.3d at 1130.

B. This Court should abstain from adjudicating Plaintiffs' claims under *Burford* due to the extreme disruption that granting Plaintiffs' requested injunctions would cause to Wisconsin's important interests in comprehensive election administration. *NOPSI*, 491 U.S. at 361. Plaintiffs have asked this Court: (1) to order the amorphous remedy of mandating "fair, reasonable, and constitutionally sufficient procedures governing the Future 2020 Elections so as to allow Plaintiffs . . . to safely participate in those elections without concerns over COVID-19," Dkt. 5 at 50 ¶ b; *see also* Dkt. 5 ¶¶ 99, 102, 112 (similar broad, undefined requests); and (2) to suspend unspecified state laws relating to absentee voting, thereby (somehow) requiring universal home delivery of ballots to all voters "*without [ ] requir[ing] [voters] to request an absentee ballot*," Dkt. 5 ¶¶ 8.b. (emphasis added); *see also* Dkt. 5 ¶¶ 54, 112; Dkt. 5 at 50, while ensuring "procedures sufficient to allow in-

person voting" for those whose disabilities "affect their ability to vote by mail," Dkt. 5 ¶ 8.b.

These extraordinary, near-boundless categories of relief would "disrupt[ ]" Wisconsin's efforts to establish a "coherent" election-administration policy. *NOPSI*, 491 U.S. at 361. According to Plaintiffs, this Court must modify seemingly any Wisconsin election law deemed "[un]reasonable" in light of the COVID-19 pandemic. Dkt. 5 at 50 ¶ b; *see also* Dkt. 5 ¶¶ 99, 102, 112. That hardly evinces a "sound respect" for Wisconsin's independence in statewide elections and would necessarily cause "needless federal conflict with [ ] state policy." *See NOPSI*, 491 U.S. at 360 (citation omitted); *accord Adkins*, 644 F.3d at 504 ("principles of federalism"). Further, Plaintiffs would have the Court order the *automatic* delivery of absentee ballots to *all* voters (without even requiring absentee-ballot requests to aid in the tracking of such ballots), oblivious to the serious voter-confusion, *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam), and election-integrity concerns, *see Griffin*, 385 F.3d at 1130–31 ("Voting fraud is a serious problem in U.S. elections generally . . . and it is facilitated by absentee voting."). Such relief would "disrupt[ ]" Wisconsin's election administration, *NOPSI*, 491 U.S. at 361, including by critically undermining the State's ongoing preparations for the upcoming 2020 elections, *accord Bowes v. Ind. Sec'y of State*, 837 F.3d 813, 821 (7th Cir. 2016), which preparations might fully resolve Plaintiffs concerns in any event, *see generally* Wolfe Memo; WEC Absentee Voting Report at 22 ("exploring the opportunity to mail" an absentee-ballot-request

form to "every registered voter without a current absentee ballot request on file for 2020").

Finally, this Court abstaining and dismissing Plaintiffs' Amended Complaint under *Burford* would not deprive them of their ability to seek judicial review in advance of the upcoming 2020 elections. "The [Wisconsin] circuit courts are also fully capable of resolving any federal constitutional arguments that [Plaintiffs] might make." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 681 n.6 (7th Cir. 2010). And, in recent weeks, the Wisconsin Supreme Court has ably addressed multiple highly contentious issues related to the COVID-19 pandemic on an expedited basis. *See* Order, *Jefferson v. Dane Cty.*, 2020AP557-OA, at *2 (Wis. Mar. 31, 2020); *Palm*, 2020 WI 42, ¶ 3. So, given that Wisconsin's judiciary is more than capable of resolving the complex issues of state election law, this Court should abstain.

## III.    Plaintiffs' Claims For Relief Fail To State A Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] formulaic recitation of the elements of a cause of action will not do;" nor will "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (second brackets in original). A court must determine whether, after "disregard[ing] any portions that are 'no more than conclusions,' [the complaint] 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d

670, 675 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678–79) (third brackets in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "'Plausibility' is not a synonym for 'probability' in this context, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (citations omitted).

## A. Plaintiffs Have Not Stated A Claim For Relief Under The First And Fourteenth Amendments

1. Under the *Anderson/Burdick* test, a court decides whether the challenged election-law restrictions are constitutional by "weigh[ing] 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate'" against "'the precise interests put forward by the State as justification for the burden imposed by its rule.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). This inquiry imposes a heavy burden on plaintiffs, and it requires the Court to weigh any burden from the election regulation against the State's interests, including its sovereign interests in regulating elections. *See Stone v. Bd. of Election Comm'rs.*, 750 F.3d 678, 681 (7th Cir. 2013). Within this framework, a law does not create an unconstitutional burden on the right to vote when it does not "represent a significant increase over the usual burdens of voting." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 198 (2008) (controlling plurality of Stevens, J.); *accord Frank I*, 768 F.3d at 748. That is why "it is obvious that a federal court is not going to decree weekend voting, multi-day voting, all-mail

voting, [ ] Internet voting," or "unlimited absentee voting." *Griffin*, 385 F.3d at 1130. And even if the court finds that an election regulation unconstitutionally burdens certain voters, that "[can]not prevent the state from applying the law generally." *Frank v. Walker*, 819 F.3d 384, 386 (7th Cir. 2016) ("*Frank II*"). A voter who cannot comply with an election regulation with "reasonable effort" may be eligible for as-applied relief, but that does not entitle the voter to statewide relief. *Id.*

2. In the first claim of their Amended Complaint, Plaintiffs allege that the State violated their right to vote under the First and Fourteenth Amendments by failing to postpone the April 7 Election in light of COVID-19. Dkt. 5 ¶¶ 99–100; *see* Dkt. 5 ¶ 107 (invoking the *Anderson/Burdick* test). As remedies, Plaintiffs seek two broad categories of relief to prevent these right-to-vote violations for the upcoming 2020 elections. First, Plaintiffs demand "fair, reasonable, and constitutionally sufficient procedures governing the Future 2020 Elections." Dkt. 5 at 50 ¶ b; *see also* Dkt. 5 ¶¶ 99, 102, 112. Second, they demand so-called universal mail-in voting, requiring the State to deliver ballots to the homes of all eligible voters, "without [ ] requir[ing] [voters] to request an absentee ballot." Dkt. 5 ¶¶ 8.b., 54, 112; Dkt. 5 at 50; *see also* Dkt. 5 ¶ 8.b (asking also for "procedures sufficient to allow in-person voting" for those whose disabilities "affect their ability to vote by mail").[15] Plaintiffs'

---

[15] Plaintiffs also appear to seek damages from the State as a remedy for this claim. *See* Dkt. 5 ¶¶ 111, 113 (requesting money damages in the statement of this claim); *but see* Dkt. 5 at 49–50 (failing to request such damages in the prayer for relief). However, as explained below, *infra* Part IV, any such remedy would be barred by sovereign immunity.

allegations fail to state an *Anderson/Burdick* right-to-vote claim as a matter of law and certainly do not come close to permitting the remedies that they seek.

To begin, Plaintiffs have failed to allege sufficient facts demonstrating that Wisconsin's election-law regime, as a whole, imposed a more-than-reasonable burden on Wisconsin voters for the April 7 Election. Wisconsin election law permitted registered voters to vote in the April 7 Election without leaving their homes by taking advantage of no-excuses-needed absentee voting. Wis. Stat. § 6.85(1). Registered voters could even request an absentee ballot electronically, either via email or on the Commission's website. Wis. Elections Comm'n, *I Want to Vote Absentee*, *supra*. 1,155,000 Wisconsin voters took advantage of this process during the April 7 Election and successfully requested and submitted absentee ballots. *See* Wis. Election Comm'n, *Absentee Ballot Report – April 7, 2020 Spring Election and Presidential Preference Primary* (Apr. 21, 2020);[16] *accord* Wis. Elections Comm'n, *More Than 69,000 Absentee Ballots Already Returned for May 12 Special Election*, *supra* (absentee-ballot figure for recent Special Election). This was an "unprecedented level" of "[a]bsentee voting" in Wisconsin. WEC Absentee Voting Report at 3. So, while Plaintiffs claim that holding the April 7 Election amounted to an "outright denial of the right to vote," Dkt. 5 ¶ 102; Dkt. 5 ¶ 109 ("utterly destroyed"), these absentee-ballot figures alone demonstrate that this is incorrect. And importantly, "the final election data conclusively indicates that the election did not produce an

---

[16] Available at https://elections.wi.gov/node/6862 (last accessed May 17, 2020).

unusual number [of] unreturned or rejected [absentee] ballots." WEC Absentee Voting Report at 24.

Plaintiffs' stray references to long lines at certain polling places in some parts of the State and to an alleged lack of sanitization supplies, *see* Dkt. 5 ¶ 103, do nothing to prove up a burden under *Anderson/Burdick* attributable to Defendants. No Wisconsin law or policy even arguably requires such long lines or lack of supplies—and Plaintiffs have not even attempted to identify any such law. *See Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789) (requiring "burden[s]" to be "imposed" by a "State . . . rule"). On the contrary, the Wisconsin Elections Commission engaged in extensive efforts to ensure sufficient sanitation supplies, staffing, and the like for every polling place. *See, e.g.*, Wolfe Memo 2–3, 5–6. Those efforts were above and beyond the requirements of state law, given that local officials ultimately have the state-law obligation to staff and supply polling places, Wis. Stat. §§ 7.10 (1)(b), 7.15 (1)(a)–(b), (k), under Wisconsin's "decentralized" regime, Wolfe Memo 1. Accordingly, none of the named Defendants here bear responsibility for any long lines or supply shortages to which Plaintiffs refer.

In any event, the alleged burdens that Wisconsin voters, including Plaintiffs, experienced during the April 7 Election cannot overcome the State's legitimate interest in holding an election on that date, as required by state law. *See* Wis. Stat. § 5.02(21). Plaintiffs suggest that the State should have postponed the election at some point between the first COVID-19 diagnosis in Wisconsin, on March 15, 2020, and April 6, 2020, right before the April 7 Election. *See* Dkt. 5 ¶¶ 47–54, 111. Yet

voting had already begun at that time, and both the State and its citizens had invested "enormous resources . . . in reliance on the election's proceeding on the announced date." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003). Election officials had spent "[t]ime and money . . . to prepare voter information pamphlets and sample ballots, mail absentee ballots, and hire and train poll workers"; "[p]ublic officials ha[d] been forced to divert their attention from their official duties in order to campaign"; "candidates ha[d] raised" and spent campaign funds; and "voters ha[d] given their attention to the candidates' messages and prepared themselves to vote." *Id.* "Hundreds of thousands of absentee voters ha[d] already cast their votes." *Id.* These "investments of time, money, and the exercise of citizenship rights" that the State, its public officials, and its citizens had already put into the April 7 Election by March 15, 2020 "[could] [ ]not be returned," *id.*, and would have been lost if the State had postponed the April 7 Election.

Wisconsin's interest in not postponing the April 7 Election was especially strong because any such action would have left the State without functioning local governments. County supervisors—who make up Wisconsin's county boards, Wis. Stat. § 59.10, which have "the authority to exercise any organizational or administrative power," subject to the statutes and constitution of Wisconsin, Wis. Stat. § 59.51(1)—take their seats on the third Monday (for Milwaukee County) or Tuesday (for all other counties) of April in evenly numbered years, such as 2020, and their terms last for two years. Wis. Stat. § 59.10(1)(b), (2)(b), (3)(d). If the State had postponed the April 7 Election, there would have been no duly elected county

supervisors to fill those seats upon their expiration on April 20 or 21, thus the seats would have become "vacant," *see* Wis. Stat. § 17.03(10), undermining local governments' ability to respond to (for example) COVID-19, *see* Wis. Stat. § 323.14 (describing county "emergency management" powers).

The remedies that Plaintiffs request here would especially burden Wisconsin's sovereign interests in election administration, *see Stone*, 750 F.3d at 681, thus the balance under *Anderson/Burdick* must fall squarely with the State. Plaintiffs' first category of remedies—asking the Court to enjoin any Wisconsin election law that it finds "[un]reasonable," Dkt. 5 at 50 ¶ b; *see also* Dkt. 5 ¶¶ 99, 102, 112—amounts to a request for this Court to impose innumerable changes to a host of unspecified Wisconsin election laws. That is an unjustifiable invitation to block the State's "compelling interest[s]" in election integrity and administration at every turn. *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). Plaintiffs' second category of remedies, universal mail-in voting with no absentee-ballot-application requirement, Dkt. 5 ¶¶ 8.b., 54, 112; Dkt. 5 at 50, fares no better, since "it is obvious that a federal court is not going to decree . . . all-mail voting" or "unlimited absentee voting," *Griffin*, 385 F.3d at 1130.

Finally, and at the very minimum, Plaintiffs' claims regarding their own unsuccessful attempts to vote absentee in the April 7 Election and subsequent decisions not to vote in person, *see* Dkt. 5 ¶¶ 13–22, do not support their requested remedy of a facial invalidation of any Wisconsin election law or procedure. Even if their allegations were sufficient to show that they, themselves, could not vote in the

April 7 Election with "reasonable effort," these allegations "[can]not prevent the state from applying the law[s] generally" in all future 2020 elections. *Frank II*, 819 F.3d at 386. Any particularized burdens faced by these individual voters in a single election are insufficient to nullify Wisconsin's various election laws as to all voters in all future 2020 elections, including those Wisconsin citizens who undoubtedly could vote in such elections with "reasonable effort." *See id.*

### B. Plaintiffs Have Not Stated A Claim For Relief Under Title II Of The Americans With Disabilities Act

1. Plaintiffs' second claim alleges a violation of Title II of the ADA, 42 U.S.C. §§ 12131–12134, and its implementing regulation, 28 C.F.R. Part 35, Dkt. 5 ¶¶ 114–132. As relevant here, Title II of the ADA requires a public entity to "reasonably accommodate a qualified individual with a disability by making changes in rules, policies, practices, or services when needed." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782–83 (7th Cir. 2002). To establish a claim under Title II of the ADA, a plaintiff must prove three elements. First, the plaintiff must show that he "is a qualified individual with a disability," *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citations omitted); 42 U.S.C. § 12131(2), which, "in turn," requires him to demonstrate that he may "participat[e]" in a state "program[ ]" with or without *reasonable* accommodations," *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560–61 (7th Cir. 1996) (emphasis added). An accommodation that "fundamentally alter[s] the nature of the service," program, or activity at issue is by law unreasonable. *Tennessee v. Lane*, 541 U.S. 509, 532 (2004); *accord P.F. by A.F. v. Taylor*, 914 F.3d 467, 472 (7th Cir. 2019) (citing 28 C.F.R. § 35.130(b)(7)(i)); *Dadian*

*v. Vill. of Wilmette*, 269 F.3d 831, 838–39 (7th Cir. 2001).  Second, the plaintiff must show that he was "denied the benefits of the services, programs, or activities of a public entity or otherwise subject to discrimination by such an entity."  *Wagoner*, 778 F.3d at 592 (citations omitted).  And third, the plaintiff must show that "the denial or discrimination was by reason of his disability."  *Id.*

While Title II of the ADA "authorizes suites by private citizens for money damages against public entities," *United States v. Georgia*, 546 U.S. 151, 154 (2006), such a recovery is only available when the plaintiff demonstrates that the State engaged in *intentional* discrimination, *Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y.*, 463 U.S. 582, 607 (1983) (White, J.) (interpreting damages available under Title VI); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (holding that "the remedies for violations of [Title II] of the ADA . . . are coextensive with the remedies available . . . under Title VI"); *accord S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013).  If a State has not intentionally discriminated, a plaintiff is limited to the "recover[y]" of "only injunctive, noncompensatory relief."  *Guardians*, 463 U.S. at 607 (White, J.).  To establish intentional discrimination under Title II of the ADA, the Seventh Circuit requires the plaintiff to show that the State acted, at minimum, with "deliberate indifference."  *Lacy v. Cook Cty.*, 897 F.3d 847, 857, 863 (7th Cir. 2018) (citing, among other authorities, *S.H.*, 729 F.3d at 261).  Deliberate indifference requires "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood."  *Id.* (citation omitted).

2. Here, Plaintiffs fail to state a claim under the ADA. Plaintiffs allege that five named Plaintiffs are individuals with disabilities under the ADA, *see* Dkt. 5 ¶¶ 13, 16, 19–20, 22: Mr. Edwards is described as having diabetes, Dkt. 5 ¶ 13; Ms. Hannah is described as having multiple sclerosis and being immunosuppressed, Dkt. 5 ¶ 16; Ms. Ackerman is describe as having "mobility and other health issues," Dkt. 5 ¶ 19; Mr. Laske is described as having a respiratory disease and being on "immune-suppressant medication and oxygen," Dkt. 5 ¶ 20; and Mr. West is described as having lung and heart conditions requiring his regular use of oxygen, Dkt. 5 ¶ 22. Although Plaintiffs' allegations are not clearly set out, Plaintiffs appear to allege that "the State" violated the ADA simply by holding the in-person April 7 Election. *See* Dkt. 5 ¶ 120.[17] Plaintiffs also allege that Defendants "refus[ed] to accommodate their disabilities" during the April 7 Election and that the harms from this "refus[al]" will repeat in future elections. *See* Dkt. 5 ¶¶ 130–31.

Plaintiffs' ADA claim and request for relief fails, as a matter of law.

First, Plaintiffs cannot satisfy the first element of this ADA claim because they have failed to request any permissible, reasonable accommodation that would afford the disabled Plaintiffs the ability to vote, beyond what Wisconsin already provides. *See Love*, 103 F.3d at 560–61 (plaintiff bears burden to demonstrate accommodation is "reasonable"). The *only* actual requested accommodation that Plaintiffs have

---

[17] Although Plaintiffs dropped the State of Wisconsin as a party in their Amended Complaint, *compare* Dkt. 5, *with* Dkt. 1, their only statement describing how any of the Defendants violated the ADA states that "the State and the Commission violated the ADA," *see* Dkt. 5 ¶ 120.

identified is a blanket request for all-mail voting in the upcoming elections without any requirement that the voter submit an absentee-ballot request. *See* Dkt. 5 ¶¶ 8.b, 54, 112; Dkt. 5 at 50; *compare, e.g.*, Dkt. 5 ¶ 129 (asserting, with no specificity, a denial of "reasonable accommodations"). Plaintiffs' proposed accommodation would constitute a "fundamental and unreasonable change" to Wisconsin's election scheme, *Dadian*, 269 F.3d at 838–39 (citation omitted); 28 C.F.R. § 35.130(b)(7) (same), which is why courts will "obvious[ly]" not "decree . . . all-mail voting" even to remedy constitutional violations, *Griffin*, 385 F.3d at 1130. The ADA does not require Wisconsin to implement such an accommodation, *Dadian*, 269 F.3d at 838–39; 28 C.F.R. § 35.130(b)(7), which means Plaintiffs' ADA claim must fail for this reason alone, *see Love*, 103 F.3d at 560–61.

Second, Plaintiffs also have not plausibly alleged that Defendants denied any of these Plaintiffs the right to vote on account of their disabilities, thus they fail to state the second or third elements of this ADA claim. *See Wagoner*, 778 F.3d at 592; *see also A.H. ex. Rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (describing this as a "but for" requirement). According to the Amended Complaint, 12 of the 14 named Plaintiffs—including all Plaintiffs described as having a disability under the ADA—requested absentee ballots, but either did not receive them or are concerned that their ballots were not counted. *See* Dkt. 5 ¶¶ 13–22. These Plaintiffs planned to vote from their homes, not in person on April 7. So any inability to vote that they suffered was due to, at most, an inadvertent mistake in the delivery of their ballots, unrelated to any of their potential disabilities and to any

alleged discrimination by any of the Defendants. Wisconsin has made *numerous* voting options available to *all* voters—including special options for disabled voters, such as voting in-person at a polling place from their vehicles with the assistance of a polling-place inspector or receiving assistance from an agent to vote via absentee ballot if hospitalized. Wis. Stat. §§ 6.82(1), 6.86(3). Nor have Plaintiffs plausibly alleged that they will be unable to safely take advantage of any of the voting options, including Wisconsin's readily available, no-excuses-needed absentee-voting system, Wis. Stat. § 6.85(1), (3), offered to them in future elections.

Finally, Plaintiffs' claim for damages under Title II of the ADA fails because Plaintiffs have not plausibly alleged that Defendants acted with "deliberate indifference," which is necessary to support such a damages claim. *See Lacy*, 897 F.3d at 863. Plaintiffs make no plausible allegations that Defendants knew that it was substantially likely that any disabled voter would be unable to take advantage of one of the many options for voting available under Wisconsin's electoral scheme— including the no-excuses-needed absentee voting available to all, Wis. Stat. § 6.85(1), (3), the curbside-voting procedure available to those with disabilities, Wis. Stat. § 6.82(1), or the hospital-based voting accommodation available to those in hospitals, Wis. Stat. § 6.86(3)(a)(1)–(2)—or that Defendants failed to act on that knowledge, *Lacy*, 897 F.3d at 863. Plaintiffs offer *only* the conclusory accusation, *see W. Bend Mut. Ins. Co.*, 855 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678–79), that Defendants acted "intentionally, with malice and reckless indifference," *see* Dkt. 5 ¶ 130. Such

conclusory allegations are "not entitled to be assumed true," and cannot suffice to survive a motion to dismiss. *Iqbal*, 556 U.S. at 681.

## IV. Plaintiffs Claim For Money Damages Under 42 U.S.C. § 1983 For Alleged Violations Of Their Right To Vote Is Barred By Sovereign Immunity

The Eleventh Amendment prohibits damages suits against the State, unless the State consents to suit or Congress "override[s] a State's Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 66 (1989); U.S. Const. amend. XI. "[A] suit against a state official in his or her official capacity . . . is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. The same is generally true under § 1983, which does not permit lawsuits for damages against either a State or state officials acting in the official capacity, because a State is not a "'person' for the purpose of § 1983," and "any official-capacity suit against a state official is one against the office, and thus against the state." *E.A. v. Gardner*, 929 F.3d 922, 925 (7th Cir. 2019).

To the extent that Plaintiffs seek damages under 42 U.S.C. § 1983 for alleged constitutional violations of their right to vote in the April 7 Election, *see* Dkt. 5 ¶¶ 111, 113 (requesting money damages in the statement of this claim); *but see* Dkt. 5 at 49–50 (failing to request such damages in the prayer for relief), the Eleventh Amendment bars such relief. Plaintiffs' Amended Complaint names as Defendants only Wisconsin agencies—the Wisconsin State Assembly, the Wisconsin State Senate, and the Wisconsin Elections Commission—and state officials in their official capacities. *See* Dkt. 5 ¶¶ 23–34. The State of Wisconsin has not consented to this suit and Congress did not abrogate sovereign immunity under § 1983. *See Will*, 491

U.S. at 71; *see also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Therefore, Plaintiffs claim for damages for their right-to-vote claim under § 1983 against all Defendants is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71; *Wynn*, 251 F.3d at 592.

## V. Plaintiffs' Claims Against Speaker Vos And Majority Leader Fitzgerald Fail Due To Legislative Immunity, But These Leaders Can Remain As Defendants Because The Legislature Can Speak For The State's Interest In Defense Of State Law

Under the doctrine of legislative immunity, "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). Legislators are entitled to immunity with respect to "legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *see Reeder v. Madigan*, 780 F.3d 799, 802 (7th Cir. 2015). Legislative immunity applies to both legislators' decisions to enact legislation and to their decisions *not* to enact legislation. *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 192 (2nd Cir. 2019) ("The 'exercise of legislative discretion' that legislative immunity is meant to protect surely implies a genuine choice whether or not to perform a given legislative act." (quoting *Bogan*, 532 U.S. at 52)); *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1063 (11th Cir. 1992) (applying legislative immunity to the choice of whether to bring a piece of legislation up for a vote).

Here, Plaintiffs have named Speaker Vos and Majority Leader Fitzgerald as Defendants in their official capacities, Dkt. 5 ¶¶ 23–24, and then allege (in addition to irrelevant, ad hominem attacks, *see* Dkt. 5 ¶¶ 72, 76) legislative inaction as the sole basis for each of their claims with respect to these named legislators, *see* Dkt. 5

¶ 65 ("[L]egislative inaction forms the heart of this case[.]" (emphasis omitted)); *see also* Dkt. 5 ¶¶ 46, 61, 64–65, 68, 75, 77, 98, 104. But, under controlling caselaw, legislators are absolutely immune for their legislative activities, including for a decision not to enact law. *See Reeder*, 780 F.3d at 802; *NRP Holdings*, 916 F.3d at 192; *Yeldell*, 956 F.2d at 1063. This includes the decision not to postpone the April 7 Election, *see, e.g.*, Dkt. 5 ¶¶ 65, 98, 111, as well as the decision not to enact the specific election reforms that Plaintiffs would prefer, Dkt. 5 ¶¶ 65, 112.

There is, however, an important reason why Speaker Vos and Majority Leader Fitzgerald may remain as parties in this case, but in a different capacity from the one that Plaintiffs envision. Under Sections 13.365 and 803.09(2m) of the Wisconsin Statutes, the Legislature has "its own independent statutory right to appear in court in defense of state laws." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 806 (7th Cir. 2019); *see Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (recognizing that "a State must be able to designate agents to represent it in federal court" (citation omitted)). As leaders of the Legislature, Speaker Vos and Majority Leader Fitzgerald have the legal authority to appear as parties to defend state law, on behalf of the Legislature's authority to speak for the State of Wisconsin's interests in defending State law, under Sections 13.365 and 803.09(2m), and have done so in both federal and state court. *See, e.g., Serv. Emps. Int'l Union (SEIU), Local 1 v. Vos*, Nos. 2019AP614, 2019AP622 (Wis. *argued* Oct. 21, 2019); *Democratic Party of Wis. v. Vos*, 408 F. Supp. 3d 951 (W.D. Wis. 2019), *appeal pending* No. 19-3138 (7th Cir. *argued* May 18, 2020). In this case, Plaintiffs made the decision to

name the Wisconsin Assembly and the Wisconsin Senate as parties, meaning there is no practical need to retain Speaker Vos and Majority Leader Fitzgerald as additional named Defendants here. Having said that, the Legislature strongly emphasizes that its leadership has the authority speak on behalf of the body's authority to defend the State's interest in the validity of Wisconsin law, under Sections 13.365 and 803.09(2m), whenever Wisconsin's laws are challenged on constitutional or other grounds of claimed invalidity in court.

## CONCLUSION

The Court should dismiss the Amended Complaint.

Dated, May 18, 2020

Respectfully Submitted,

/s/ Misha Tseytlin

MISHA TSEYTLIN
(State Bar No. 1102199)
KEVIN M. LEROY
(State Bar No. 1105053)
TROUTMAN SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Attorneys for Legislative Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May, 2020, a true and accurate copy of

the foregoing was served via the Court's CM/ECF system upon all counsel of record.

/s/ Misha Tseytlin

MISHA TSEYTLIN
TROUTMAN SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com